IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

AUTHENTICOM, INC.,

          Plaintiff,

v.                                          OPINION

CDK GLOBAL, LLC and                      17-cv-318-jdp
THE REYNOLDS AND REYNOLDS COMPANY,

          Defendants.

---

    The court has reviewed the parties' submissions regarding the form of the preliminary injunction. Because defendants' circumstances and systems differ, the court will issue a separate order for preliminary injunction for each defendant. The orders will be the same in many respects, differing primarily in the implementation procedures and deadlines. In this opinion, the court explains its decisions on the main points of contention; the terms of the preliminary injunctions will reflect these decisions.

    The court's general perspective is that the preliminary injunctions extend a lifeline to Authenticom, to maintain its viability until this case is finally decided on the merits. The preliminary injunctions are not intended to give Authenticom free reign to maximize its business as it sees fit while the court keeps defendants sidelined. Accordingly, Authenticom will be allowed access to defendants' systems for dealers who authorized Authenticom to provide data integration services as of May 1, 2017, the date Authenticom filed suit. That date marks Authenticom's earliest assertion in this court that it was suffering irreparable harm as a result of defendants' conduct. Accordingly, the court will allow Authenticom to return to that point to serve those dealers who, as of that date, authorized Authenticom to access DMS data and provide data integration services.

Authenticom's access to defendants' DMSs is generally limited to read-only data exporting. In supporting its proposed form of injunction, Authenticom contended that "writing back data" is "an important part of Authenticom's services (and a need of many vendors)." Dkt. 182, at 4. But the assertion is conclusory, and it is not consistent with Authenticom's presentation on the merits of its motion for preliminary injunction, where it downplayed the need for data write-back. *See* Dkt. 143, ¶¶ 45-46 (According to Steve Cottrell: "Nearly all of Authenticom's business . . . does not 'push' data[.] . . . The only portion of Authenticom's current business that 'pushes' data to the DMS is a service that Authenticom provides to cleanse the dealership's customer information stored in the DMS."). So, consistent with its previous testimony, Authenticom may write back only to provide data-cleansing services for the dealers for whom it was providing data-cleansing services as of May 1, 2017, and this type of access is limited to the CDK DMS. It is not clear that Authenticom was providing data cleansing for Reynolds dealers as of May 1, 2017, so the court will not require Reynolds to allow Authenticom to write back to the Reynolds DMS.

Authenticom will need to secure the dealer's authorization to access specific data fields, and Authenticom will need to communicate those authorized data fields to defendants. Authenticom does not say that it is unable to provide this information or that it would be unduly burdensome; rather, it summarily contends that such a "provision is unwarranted." Dkt. 182, at 5. But as the court explained in its July 14, 2017 opinion and order, Authenticom's access is appropriately restricted to those data fields reasonably necessary to provide data integration services. Dkt. 172, at 22. And defendants have a right to know what those fields are. Once Authenticom secures the dealer's authorization and represents to defendants that the authorized fields are reasonably necessary to provide data integration

2

services, defendants will facilitate access. That said, defendants will not be able to unilaterally second guess the dealer's and Authenticom's representation that access to specific data fields is authorized and reasonably necessary. If defendants believe that Authenticom is accessing data that is not reasonably needed for its data integration services, they will have to bring that matter to the court's attention.

The court rejects the notion suggested by Reynolds that the preliminary injunction has to provide Authenticom with access to its DMS in a manner identical to Reynolds's previous "whitelisting" approach. Reynolds's previous whitelisting for certain vendors and dealers demonstrates that Reynolds was willing and able to allow some exceptions to its customary means of allowing third-party access to its DMS. But the court is not persuaded that it must pattern the injunction on Reynolds's past whitelisting practices. The court adopts a simpler approach in which Reynolds will issue one set of Authenticom-specific credentials for each dealer, not one set for each dealer/vendor relationship. One set of credentials will allow Authenticom to access the authorized data fields necessary to provide data integration services for all the vendors that provide services to that dealer. Similarly, the court will not adopt Reynolds's "Data Tracking Certification" proposal. Reynolds does not explain why it needs to track where Authenticom sends the dealer's data.

The court is not at all persuaded by Reynolds's conclusory statements about the effort it would take to set up user credentials for Authenticom. The court will grant Authenticom's motion to strike, Dkt. 188, the July 21, 2017 declaration of Robert Schaefer, Dkt 181-1. Authenticom is correct that the court did not invite further evidentiary submissions after affording the parties ample opportunity to present evidence on all issues pertinent to Authenticom's motion for preliminary injunction. At the evidentiary hearing, Reynolds's

explanation of its security needs relied heavily on vague metaphors (such as "iron gates" and "sandboxes") rather than actual data and measurements. But even if the court were to consider the latest Schaefer declaration, the court would not find it persuasive because it contains Schaefer's seat-of-the-pants estimates based on some unspecified "past experience." And it apparently assumes that each Authenticom credential would be set up manually for a particular vendor/dealer pair. The court has rejected that approach, and Schaefer does not appear to have considered whether, if called upon to process a larger number of credentials, the process could be streamlined or automated with Authenticom's cooperation. Moreover, the court is limiting Authenticom to dealers that had authorized Authenticom to provide data integration services as of May 1, 2017, so that restriction will ameliorate the burden on Reynolds.

The court will also enjoin defendants from enforcing those provisions in its contracts with dealers or vendors that restrict, or have the effect of restricting, any dealer or vendor from obtaining data integration services from Authenticom. Enforcing these provisions would effectively prevent Authenticom from providing data integration services to dealers as contemplated under the injunction. For the same reason, the orders prevent defendants from retaliating against any dealer or vendor as result of its decision to do business with Authenticom.

The court's determination of other issues will be apparent from the two orders for injunction issued herewith.

Entered July 28, 2017.

                                          BY THE COURT:

                                          /s/

                                          _____

                                          JAMES D. PETERSON
                                          District Judge